U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

JUL 1 6 2014

CHRIS R. JOHNSON, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARBARA LAUBENSTEIN     PLAINTIFF

V.     CASE NO. *14-5227 TLB*

    DEFENDANT

CONAIR CORPORATION

## COMPLAINT

Comes now the Plaintiff, Barbara Laubenstein, by and through her undersigned counsel, and for her Complaint, states as follows:

### PARTIES

1. The Plaintiff, Barbara Laubenstein, is a citizen and resident of Benton County, Arkansas.

2. The Defendant, Conair Corporation, is a privately held company that is incorporated in the State of Delaware and headquartered in East Windsor, New Jersey.

3. Conair Corporation is authorized to and does regularly conduct business in the State of Arkansas.

4. Conair Corporation's registered agent for service is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas, 72201.

### JURISDICTION AND VENUE

5. The Plaintiff brings this case for retaliation and wrongful termination in violation of Sarbanes-Oxley Act (SOX) and in violation of Arkansas common law.

6. The Plaintiff was employed as Vice President of Sales – Walmart for Conair Corporation's Allegro Division.

7. She was wrongfully terminated after reporting that Conair Corporation was engaged in a scheme to defraud Walmart, a publicly held corporation.

8. This Court has jurisdiction in this case pursuant to the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, and 28. U.S.C. § 1331.

9. This Court has supplemental jurisdiction over the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS

11. Conair Corporation is a developer, manufacturer and marketer of health and beauty products and kitchen and electronic appliances.

12. Allegro is the division of Conair that develops, manufactures and markets cosmetic and travel organizer bags.

13. Conair Corporation is a contractor to Walmart, and Walmart is Conair Corporation's largest client.

14. In 2012, the Allegro Division of Conair Corporation sold approximately $30 million in products to Walmart.

15. In addition to selling products to Walmart, Conair Corporation contracts and serves as the Category Advisor to Walmart. In that capacity, Conair Corporation is responsible for developing, recommending and implementing strategic category, marketing, and consumer business plans to Walmart.

16. Conair Corporation is contracted to develop such plans not just for their own products, but for all products within the category, including competitors' products.

17. In developing these plans for the category as a whole for Walmart, Conair Corporation develops, conducts, and advised Walmart on category line reviews, cost analysis, and industry trends analysis for short-term and long term forecasting, planning and implementation to drive profitable growth.

18. In this capacity, employees with Conair Corporation report to Walmart regularly regarding category performance, insight into market and competitive activities and trends, sales, market share, etc.

19. The Plaintiff was employed by Allegro, a division of Conair Corporation as the Vice President of Sales – Walmart, in the Bentonville, Arkansas location from May 19, 2009 to September of 2011, at which time she voluntarily resigned to pursue other opportunities.

20. In 2011, under the direction of the Plaintiff, the Allegro Division achieved record sales with Walmart.

21. In 2011, P.J. Brice, President of the Allegro Division of Conair at the time, actively recruited Ms. Laubenstein to return to her prior position at Conair Corporation.

22. On November 28, 2011, The Plaintiff returned to Conair Corporation and resumed the position of Vice President of Sales – Walmart, where she remained until July 9, 2013, at which time she was terminated in retaliation for reporting the scheme to defraud Walmart.

23. As Vice President of Sales – Walmart, the Plaintiff's job duties included:

- Sales and profitability of the Walmart USA business, including Sam's Club;
- Identifying, pursuing and securing new sales opportunities (brands and/or categories);
- Maintaining and growing existing business(es);
- Communicating Walmart's strategic merchandising and brand initiatives to the Allegro team;
- Communicating Walmart's operational and logistical initiatives to the Allegro team (i.e. sustainability, etc.);
- All corporate communication to Walmart;
- Setting direction and overseeing all basic and special projects for Walmart;
- Coordinating and chairing the weekly Walmart team conference call;
- Overseeing category advisor function; and
- Walmart POS Review.

24. The Plaintiff was wrongfully terminated from Allegro after she reported to P.J. Brice, President of Allegro Division, that Conair Corporation was engaged in a calculated and intentional scheme to defraud Walmart.

25. More specifically, Conair Corporation was engaged in a scheme whereby Conair Corporation sold specific products to Walmart, but then substituted and shipped different and, often inferior, products to Walmart.

26. To induce Walmart to purchase products from Conair Corporation, the Plaintiff, in her capacity as Vice President of Sales for Conair, made numerous representations and warranties regarding the specifications of the product, including but not limited to, the quality of the product.

27. In doing so, the Plaintiff presented samples to the Walmart buyers to represent the quality of the product. The designs presented and ultimately purchased from Walmart were based upon trends and an extensive analysis of the market.

28. The Plaintiff represented that the designs purchased by Walmart were proprietary and would be sold exclusively at Walmart.

29. The Plaintiff represented to Walmart that the products sold had passed Walmart's required consumer product testing specifications.

30. Based upon the Plaintiff's representations to Walmart, Walmart purchased over $30 million, at cost, in product in 2012 from the Allegro Division of Conair.

31. Unbeknownst to the Plaintiff, and despite the representations and warranties made, Conair Corporation fraudulently substituted the products delivered to Walmart.

32. The products Conair Corporation regularly and customarily substituted for the products actually sold were: 1) taken from Conair's excess inventory; 2) had been discontinued and deleted across other retailers; 3) were not exclusive to Walmart; 4) had not passed required consumer product testing; 5) were of different or inferior quality then the products represented to be sold; and 6) were not on trend as had been represented.

33. Conair Corporation failed and refused to notify Walmart of such substitutions or to obtain approval for such substitutions.

34. Indeed, Conair Corporation went to great lengths to ensure that the substitutions were concealed from Walmart.

35. Conair Corporation would surreptitiously cover the UPC label of the old products with the UPC label of the current product and ship the old product to the various locations.

36. In doing so, Conair Corporation was able to unload its old, inferior inventory while charging Walmart for the new, superior product.

37. This type of fraudulent practice is absolutely prohibited by Walmart.

38. Conair Corporation's fraudulent practice negatively impacted sales as well as future forecasted sales.

39. Conair Corporation's substitution practice also compromised the integrity of the data that Conair was contractually bound to provide to Walmart as Category Advisor.

40. The data regarding the key metrics including sales, in stock, days of supply, inventory management, and replenishment was incorrect. This information is essential to Walmart in accurately forecasting and development of strategic plans.

41. The Plaintiff first became aware of this practice when she was conducting an audit of the modular at the Walmart Bentonville store.

42. The Plaintiff reported the fraudulent substitutions to John Dunkel, Vice President of Operations, and Dennis Noren, Replenishment Manager/Demand Planning, who admitted to the practice, but assured her that the practice would be discontinued.

43. To the contrary, Mr. Dunkel and Mr. Noren did not discontinue the practice, but simply increased their efforts to conceal the substitutions by ensuring that the substituted products were not sent to the Bentonville Walmart or other Walmart locations where the substitutions were more likely to be noticed by the Plaintiff's audit.

44.  The Plaintiff reported the fraudulent substitution practice to P.J. Brice, President of the Allegro Division, who responded by retaliating against the Plaintiff.

45.  The Plaintiff was continually subjected to a hostile work environment immediately and subjected to tangible adverse employment actions following her reporting to Mr. Brice.

46.  In July of 2013, the Plaintiff was terminated in retaliation for reporting Conair Corporation's fraudulent activities.

## COUNT I
## VIOLATION OF SARBANES-OXLEY ACT

47.  The Plaintiff incorporates those allegations set forth in the preceding paragraphs.

48.  The Plaintiff is an employee of Conair Corporation within the meaning of and subject to the protections set forth in 18 U.S.C. § 1514A.

49.  Conair Corporation is a private contractor to a public company within the meaning of and subject to 18 U.S.C. § 1514A.

50.  The Plaintiff provided information that she reasonably believed constituted a violation as set forth in 18 U.S.C. § 1514A(a)(1).

51.  The Plaintiff provided such information to persons with supervisory authority over the Plaintiff as well as other persons who had the authority to investigate, discover, or terminate the misconduct.

52.  In retaliation for the Plaintiff's reporting, Conair Corporation retaliated against the Plaintiff, thereby subjecting her to harassment, adverse employment actions, and, ultimately, termination.

53. The Plaintiff has suffered, is now suffering, and will continue to suffer injury from Conair Corporation's illegal practice, to which she is entitled to recover damages.

## COUNT II
## WRONGFUL TERMINATION IN VIOLATION OF ARKANSAS LAW

54. The Plaintiff incorporates those allegations set forth in the preceding paragraphs.

55. The Plaintiff reported violations of state and federal law.

56. The public policy of the State of Arkansas is contravened if an employer discharges an employee for reporting a violation of state or federal law.

57. The Plaintiff has suffered, is now suffering, and will continue to suffer injury from Conair Corporation's illegal practice, to which she is entitled to recover damages.

## JURY DEMAND

58. The Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court award the Plaintiff:

a. Reinstatement of employment, or in lieu of reinstatement, front pay;

b. Back pay;

c. Compensatory damages so as to make the Plaintiff whole, including but not limited to damages for emotional distress, impairment of reputation, personal humiliation, and other non-economic harm resulting from retaliation;

d. Injunctive relief enjoining the Defendant from further violations;

e. Punitive damages;

f. Attorney's fees and costs;

g. Prejudgment and post judgment interest; and

h. All other just and proper relief to which she may be entitled.

Respectfully submitted,

Donald B. Kendall (Ark. Bar No. 70037)
Susan Keller Kendall (Ark. Bar No. 98119)
Kendall Law Firm, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Tel: (479) 464-9828
Fax: (479) 464-9768