IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BARBARA LAUBENSTEIN                                                    PLAINTIFF

V.                          CASE NO. 5:14-cv-05227-TLB

                                                                       DEFENDANT
CONAIR CORPORATION

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PROCEEDINGS,
COMPEL ARBITRATION AND STRIKE JURY DEMAND

I. INTRODUCTION

The Plaintiff, Barbara Laubenstein, filed her Complaint against Conair Corporation alleging that she was wrongfully terminated in retaliation for reporting Conair's deceptive and illegal practices. In her original complaint, Plaintiff asserted a cause of action for wrongful termination in violation of Sarbanes-Oxley ("SOX") and Arkansas common law. Conair filed a motion seeking to compel arbitration of the Plaintiff's state law claim and to stay the Plaintiff's SOX claim pending resolution of the arbitration.[1]  Conair also moved to strike the Plaintiff's demand for a jury as to both her SOX and state court claims. Plaintiff submits this response to the Defendant's motion and asks that this Court deny the Defendant's motion.

---

[1] Counsel for the Defendant submitted a declaration in support of its motion stating that counsel for the Plaintiff refused to agree to arbitrate, but cited nothing to support her refusal to do so. This is incorrect. Counsel for the Plaintiff specifically discussed with counsel for the Defendant the Plaintiff's position that the entire agreement is unenforceable in light of the recent revisions to Sarbanes-Oxley. Counsel for Plaintiff also mentioned, but did not have the citation readily available, that there was a recent decision from the federal court in Puerto Rico that supported Plaintiff's position.

1

## II. SUMMARY OF ARGUMENT

A. **Defendant's Motion to Compel Arbitration must be denied.**

The Defendant's motion is premised on a purported arbitration agreement executed by the Plaintiff while employed with Conair. Defendant stipulates that the arbitration agreement is invalid and unenforceable with respect to Plaintiff's SOX claim, but seeks to compel arbitration of the Plaintiff's state court claim. Defendant's Brief, Doc. No. 10, P. 12. The Defendant's motion to compel arbitration must be denied for two reasons. First, the arbitration agreement is unenforceable in its entirety pursuant to the anti-arbitration provision contained in SOX. In 2010 the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") was enacted and amended SOX by adding an anti-arbitration provision. The anti-arbitration provision states clearly that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under the section." 18 U.S.C. § 1514A(e). In the present case, the purported arbitration agreement undoubtedly requires arbitration of a dispute arising under SOX. As such, the clear and unambiguous language of the anti-arbitration provision renders the entire agreement invalid and unenforceable. The anti-arbitration provision does not contain any language that would strike down an arbitration agreement "only to the extent" that it required arbitration of SOX claims. To the contrary, the anti-arbitration provision strikes down the entire arbitration agreement.

Second, the Defendant has failed to prove the existence of a valid agreement to arbitrate the dispute. The determination of whether a valid agreement to arbitrate exists is decided by reference to state contract law. The arbitration agreement in the present case lacks mutual assent, is unconscionable, and is impossible to perform.

**B.     Defendant's Motion to Strike Jury Demand must be denied.**

The Defendant contends that the Plaintiff waived her right to a jury and moves to strike the Plaintiff's jury demand as to those claims that proceed before this Court, including the Plaintiff's SOX claim. The Defendant's motion fails for two reasons. First, SOX clearly states that waivers of jury trials are not enforceable. Second, the Defendant's argument for waiver is premised solely upon the purported arbitration agreement. As the arbitration agreement is invalid and unenforceable, so to, is any waiver for jury trial contained therein.

### III. STATEMENT OF FACTS

The following facts are as set forth in the Plaintiff's Declaration attached hereto as Exhibit A.

The Plaintiff was initially hired by Conair in 2009. At the time that she was hired, she was not required to sign an arbitration agreement with Conair. At no time during her employment from May of 2009 until September of 2011 was she required to sign an arbitration agreement with Conair. In September of 2011, the Plaintiff resigned from her employment with Conair and began working for a third party. Shortly after her resignation, she was recruited by Conair to return to employment at Conair. She returned to employment at Conair in November of 2011, and remained an employee there until she was terminated on July 9, 2013.

Prior to the Plaintiff agreeing to return to work at Conair in November of 2011, she negotiated with Conair regarding the terms of her re-employment. Specifically, she negotiated that all the terms of her original employment that were in place at the time of her resignation in September of 2011 would be reinstated. These terms included salary,

bonus, vacation, profit sharing, 401(k), and health insurance.  Id.  She was never advised during these negotiations that she would be required to sign an arbitration agreement.

Only after the Plaintiff resigned from her then third party employer and returned to Conair was she advised that she would be required to sign an arbitration agreement.  She did not have the opportunity to consider the arbitration agreement while she still had the benefit of a job with another employer.  After she returned to Conair, Enrique Hernandez presented the Plaintiff with the arbitration agreement.   Initially, she did not sign the agreement, but was advised by Hernandez that she was required to.  She was not advised that the terms were negotiable.  She was required to sign the agreement as a condition of continued employment.  As such, she acquiesced and signed the agreement.

The purported arbitration agreement requires that the Plaintiff arbitrate her claims in the county in California in which the Plaintiff was primarily employed.  The Plaintiff was never employed in California.  She was employed at Conair's Bentonville, Arkansas location.  She performed her duties in Arkansas as she was responsible for sales to Walmart.  She never lived in California and has never been employed in California.  If she were require to arbitrate this matter in California, she would be required to incur significant expenses that she would not have to incur if the case were litigated in Arkansas.  She would also be required to spend more time away from her current employment.  All of these factors make it very difficult for the Plaintiff to proceed with arbitration in California.

## IV. LEGAL ARGUMENT

A. **The Anti-Arbitration Provision of Sarbanes-Oxley renders the purported arbitration agreement invalid and unenforceable with respect to Plaintiff's SOX claim and non-SOX state court claim.**

The Defendant devotes a significant portion of its brief emphasizing the federal Arbitration Act ("FAA") and the California Arbitration Act's ("CAA") policy in favor of arbitration and arguing that such policy mandates arbitration in this case. Defendant's reliance on this policy is misplaced as the policy favoring arbitration has been specifically overridden by the recent anti-arbitration amendments to SOX.

In determining whether a matter should be submitted to arbitration, courts must consider whether there are any federal statutes or policies that render the Plaintiff's claims non-arbitrable. CompuCredit Corp. v. Greenwood, ___ U.S. ___, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012). While federal policy may favor arbitration, the policy is irrelevant when "overridden by a contrary congressional command." CompuCredit Corp. v. Greenwood, ___ U.S. ___, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) citing Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). SOX is such a contrary congressional command. Consequently, neither the Plaintiff's SOX nor her state court claims are subject to arbitration.

Until 2010, complaints alleging a violation of whistleblower protection found in SOX could be subject to arbitration. However, in 2010, Congress enacted the Dodd-Frank amendment to SOX, and therein, expressly invalidated predispute arbitration agreements in their entirety when a litigant has both SOX and non-SOX claims. Dodd-Frank overrides the federal policy in favor of arbitration and renders the purported arbitration agreement in the case at bar invalid and unenforceable. Dodd-Frank represents "the refinement and

5

restriction" of what had previously been an unblinking national policy favoring arbitration. Pezza v. Investors Capital Corp., 767 F. Supp.2d 225, 226 (D. Mass. 2011).

The Dodd-Frank amendment to SOX provides in relevant part:

> **(e) Nonenforceability of certain provisions waiving rights and remedies or requiring arbitration of disputes.--**
>
> **(1) Waiver of rights and remedies.--**The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.
>
> **(2) Predispute arbitration agreements.-- <u>No predispute arbitration agreement shall be valid or enforceable</u>**, if the agreement requires arbitration of a dispute arising under this section.

18 U.S.C. §1514A(e)(emphasis added) (hereinafter referred to as the "anti-arbitration provision").

In applying the anti-arbitration provision to the facts of this case, the Court must first consider whether the arbitration agreement requires arbitration of a dispute arising under SOX. In the present case, the answer is yes -- the arbitration agreement undeniably requires arbitration of Plaintiff's SOX claim. The Defendant did not carve out a SOX exception to the arbitration agreement, although it certainly could have.[2] Once this Court determines that the arbitration agreement applies to Plaintiff's SOX claim, the Court must find SOX renders the arbitration agreement invalid and unenforceable <u>in its entirety</u> and not just with respect to Plaintiff's SOX claims. The anti-arbitration provision of SOX does not contain any limiting language or exceptions that provide that the

---

[2] The Defendant specifically carved out from the arbitration agreement claims for workers' compensation, unemployment insurance, and matters within the jurisdiction of the California labor commissioner. Agreement, Exhibit B. However, the Defendant failed to carve out an exception for claims arising under SOX, which is fatal to the agreement as a whole.

6

arbitration agreement is invalid and unenforceable only **to the extent** that it applies to SOX claims. To the contrary, the anti-arbitration provision of SOX simply, clearly and unambiguously states that the arbitration agreement is invalid and unenforceable. The failure of the Defendant to carve out a SOX exception is fatal to the arbitration agreement in its entirety.

The Plaintiff's counsel's research has only revealed one case since the passage of Dodd-Frank in 2010 in which a court was called upon to determine the invalidation of an arbitration agreement as it applied to a plaintiff's SOX and non-SOX claims. In Stewart v. Doral Financial Corp., 997 F.Supp.2d 129 (D. Puerto Rico, 2014), the plaintiff filed a complaint in federal district court against his former employer, Doral Financial Corporation ("Doral"), asserting claims under SOX and breach of employment contract pursuant to Puerto Rico's Civil Code. Doral filed a motion to dismiss or, in the alternative, motion to compel arbitration based upon an arbitration agreement that mandated arbitration of Plaintiff's SOX and non-Sox claim. Doral conceded, as does Conair in the present case, that the arbitration agreement is invalid with respect to the plaintiff's SOX claim. However Doral argued, as does Conair in the present case, that the plaintiff's non-SOX breach of contract claim was subject to a valid arbitration agreement. Id. at 131. The plaintiff responded that the breach of contract claim was not subject to arbitration because the arbitration agreement was invalid and unenforceable in its entirety and as to all claims pursuant to the Dodd-Frank amendment to SOX. The District Court for Puerto Rico agreed with the plaintiff and held that the anti-arbitration provision of SOX rendered the arbitration agreement invalid as a whole. In so doing, the district court denied Doral's

motion and found that the breach of contract claim was not subject to mandatory arbitration. Id. at 139.

The language of the anti-arbitration provision of SOX clearly and unambiguously strikes the entire agreement down as unenforceable. The United States Supreme Court has consistently held that, where a statute's language is clear, it must be applied as written:

> **We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. [Citations omitted.] When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." [Citations omitted.]**

Connecticut National Bank v. Germain, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (emphasis added). The legislature clearly stated that the predispute arbitration agreements are unenforceable if they require arbitration of claims arising under SOX. The predispute arbitration agreement requires arbitration arising under SOX. Because it requires arbitration under SOX, it is unenforceable in its entirety. The statutory language invalidates the arbitration agreement as a whole -- not some portion of it. The statute does not state that the arbitration agreement remains enforceable as to non-SOX claims.

Defendant acknowledges that the anti-arbitration provision of SOX bars the arbitration of the Plaintiff's SOX claims, but nonetheless argues that the arbitration agreement remains in effect as to the state court claim. The Defendant's argument controverts the clear language of the anti-arbitration provision. The Plaintiff can only anticipate that Conair will urge this Court to disregard the plain language and argue that Congress only intended to invalidate arbitration agreements **to the extent** that such an

agreement would apply to SOX claims. Because the language is clear, the intent of Congress is irrelevant. Connecticut National Bank v. Germain, 503 U.S. at 253–54. However, should this Court consider the Congressional intent, such intent only serves to support the Plaintiff's position that the arbitration agreement is invalid in its entirety.

Congress' intent to invalidate overly broad arbitration agreements in their entirety can be found in a simple comparison of three different provisions of Dodd-Frank, all of which pertain to arbitration limitations. Compare 7 U.S.C. § 26(n)(2) ("Commodity Exchanges Provision") ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.") and 18 U.S.C. § 1514A(e) ("SOX Provision") ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); with 12 U.S.C.§ 5567(d)(2) (Bureau of Consumer Financial Protection Provision) ("[N]o predispute arbitration agreement shall be valid or enforceable **to the extent** that it requires arbitration of a dispute arising under this section.") (Emphasis added).

Had Congress intended that the anti-arbitration provision of SOX render that arbitration agreements invalid only **to the extent** that they required arbitration of a SOX claim, Congress could have included such limiting language as it did in the amendments relating to the Bureau of Consumer Financial Protection Provision. Congress did not do so. The two provisions of Dodd-Frank pertaining to SOX and Commodity Exchanges contain no such limiting language. This difference is key because "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in

the disparate inclusion or exclusion." Russello v. U.S., 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), quoting U.S. v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972). If Congress intended by Dodd-Frank to invalidate predispute arbitration agreements only "to the extent" that they required arbitration of SOX whistleblower claims, Congress would not have used different (and broader) language than it used in Bureau of Consumer Financial Protection Provision.

Congress, had it so desired, could have added limiting language providing that arbitration agreements are only unenforceable as to SOX claims. Congress did not do so. Conair could have added limiting language to the arbitration agreement. Conair did not do so. The arbitration agreement is unenforceable and invalid in its entirety. Accordingly, the Defendants' motion must be denied.

**B.  The arbitration agreement is invalid under the state laws of contract construction.**

The arbitration agreement is also invalid and unenforceable because under the state laws of contract construction. Before finding that the FAA or CAA mandate arbitration, the Court must first determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. See 9 U.S.C. § 4; Cal. CCP. Code. § 1281. Conair has failed to make a threshold showing that a valid written agreement to arbitrate existed, and its motion must be denied.

The FAA provides that any contract to settle a dispute by arbitration shall be valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Likewise, the CAA contains the same savings clause as that contained in the FAA. Cal. CCP. Code. § 1281. The United States Supreme Court has described the savings clause as reflecting the "fundamental principal that arbitration

10

is a matter of contract" and, in line with this principal, courts must place arbitration agreements on an "equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 563 U.S. 321, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (citations omitted). Because arbitration agreements are a matter of contract, they may be invalidated by "generally applicable contract defenses such as fraud, duress, or unconscionability." Concepcion, 131 S. Ct. at 1745. In determining whether a valid contract exists between the parties, courts look to state court laws of contract construction. Id. The Defendant contends that California's substantive law on contract construction is controlling.[3] Defendant's Brief, Doc. No. 10, P. 10. As set forth below, the agreement fails under both California and Arkansas state laws of contract construction.

The arbitration agreement is unconscionable. The California Supreme Court has made clear that unconscionability remains a valid defense to a petition to compel arbitration. Chavarria v. Ralphs Grocery Co., 733 F.3d 916 (9th Cir. 2013). In fact, California courts take a broad view of unconscionability. Under California law, an arbitration agreement must be both procedurally and substantively unconscionable for it to be invalidated. A sliding scale is used to assess procedural unconscionability in proportion to substantive unconscionability: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to

---

[3] The arbitration agreement provides that the arbitration "will be submitted to and resolved by final and binding arbitration as provided for by the California Arbitration Act, California Code of Civil Procedure, Section 1280, et.seq." Arbitration Agreement, Exhibit B. While this choice-of-law provision incorporates California's procedural rules of arbitration into the contract, it is unclear as to whether this provision incorporates California substantive state law. See, Cronus Invs., Inc. v. Concierge Servs., 35 Cal.4th 376, 380, 25 Cal.Rptr.3d 540, 107 P.3d 217 (2005). The arbitration agreement further provides that "the arbitrator shall apply applicable federal and state substantive law," which is not applicable to the issue before this Court.

the conclusion that the agreement is unenforceable, and vice versa. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Cal. 2000).

A court examines two factors in passing on a question of procedural arbitrability: oppression and surprise. "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997). Substantive unconscionability occurs in the employment context when an arbitration agreement is "one-sided" in favor of the employer without sufficient justification. Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064 (Cal. Ct. App. 2003).

Under California law, arbitration agreements are procedurally unconscionable when they are imposed upon employees as a condition of their continued employment. Armendariz, supra, 24 Cal. 4th at 99. In Armendariz, the court considered whether a preemployment arbitration agreement was unconscionable. It first concluded that the agreement was one of adhesion as it was offered to the employees on a "take it or leave-it basis noting that "few employees are in a position to refuse a job because of an arbitration agreement." Id. The court went on to reason:

> Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement. "Private arbitration may resolve disputes faster and cheaper than judicial proceedings. Private arbitration,

> however, may also become an instrument of injustice imposed on a 'take it or leave it' basis. The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness." (Engalla, supra, 15 Cal. 4th at p. 989 (conc. opn. of Kennard, J.).)

Id.

In the present case, the arbitration agreement that the Plaintiff was required to sign was one of adhesion and was procedurally unconscionable. As stated by the Armendariz decision, the agreement was presented to the Plaintiff on a take it or leave it basis. Plaintiff's Declaration, Exhibit A. Conair never indicated to the Plaintiff that she could negotiate with respect to any terms contained in the agreement. Id. To the contrary, Conair never mentioned the arbitration agreement in negotiations with the Plaintiff regarding her re-employment. Id. From 2009 to 2011, the Plaintiff was never required to sign an arbitration agreement with Conair. In 2011, the Plaintiff negotiated with Conair regarding her re-employment. Both parties negotiated and agreed that the Plaintiff would return in November of 2011 to employment with the same terms and conditions as those she had when she left in September of 2011. Id. Only after the Plaintiff resigned from her then current employer and returned to employment at Conair in November of 2011 was she notified that she would be required to sign the arbitration agreement. Id. The arbitration agreement is even more procedurally unconscionable than that presented to the Armendariz court. In Armendariz, the court was considering a preemployment agreement. In the present case, the agreement was not presented to the Plaintiff preemployment. She did not have an opportunity to consider the arbitration agreement while she still had the benefit of a job with another employer. The Plaintiff has met both prongs of procedural unconscionability – oppression and surprise.

Because the contract is clearly a contract of adhesion and procedurally unconscionable, this Court must then look be "particularly attuned" to the substantively unconscionable terms contained in agreement. See, Armendariz, 24 Cal. 4th at 99. In the present case, the agreement is substantively unconscionable as well. The agreement requires that the arbitration proceedings "be held in California at a location mutually convenient to the employee and the Company in the County in which the employee was primarily employed by the Company." Arbitration Agreement, Exhibit B.

The Plaintiff is resident and citizen of Benton County, Arkansas. Plaintiff's Declaration, Exhibit A. The Plaintiff has never resided in California. Id. The Plaintiff has never been employed in California. Id. There is not a "mutually convenient" location in California to conduct the arbitration proceeding. To require the Plaintiff to pursue a cause of action in California would be unconscionable. The Plaintiff, as well as the majority of her witnesses reside in Arkansas – those witnesses include current and former Conair employees as well as Walmart employees. The Plaintiff has obtained employment since her termination from Conair. Id. She is currently the Executive Vice President of a small start-up company and is responsible for all sales to Walmart. Id. There is no one else in her role at her current employer that shares the duties with the Plaintiff. Id. If she is required to travel to California to arbitrate this matter, it would require additional time out of the office because of the travel to and from. Id. While a jury trial in Arkansas would also require the Plaintiff to be out of the office, it would require less time off of work and she would have the opportunity to go to the office in the evenings so as to manage her work load. Id. The Plaintiff would also incur significant additional expenses that she would not incur in Arkansas including hotel and airfare. Id. Most

significant, she would be required to retain local counsel in California. Id. It would be terribly difficult for the Plaintiff to arbitrate this case in California.

The California courts have specifically held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." Armendariz, supra, 24 Cal. 4th at pp. 110-111. Arbitration agreements that include forum-selection provisions are categorically unconscionable when they require an out-of-state claimant to travel to another state to arbitrate. See, e.g., Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th 2006); Newton v. American Debt Services, Inc., 549 Fed.Appx. 692 (9th Cir. 2013); and Bolter v. Superior Court, 87 Cal.App.4th 902, 104 Cal.Rptr.2d 888 (2001). For the reasons that the agreement is unconscionable under California law, it is also unconscionable under Arkansas law. F&G Financial Services, Inc. v. Barnes, 349 Ark. 505, 78 S.W.3d 720, (Ark. 2002).

The agreement is also impossible to perform. It is impossible to hold the arbitration proceedings in California in the county where the Plaintiff was primarily employed as she was *never* employed in California – much less *primarily* employed there.

Even if Conair were willing to now hold the arbitration in a location more convenient to the Plaintiff, this does not change the fact that the arbitration agreement as written is unconscionable. Such a willingness "can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." Stirlen, supra, 51 Cal. App. 4th at 1535-1536. Similarly, under Arkansas law, contracts must be valid

as written. Arkansas courts will not re-write a contract for the parties because "to do so would mean that the court would be making a new contract and it has consistently held that this will not be done." <u>Bendinger v. Marshalltown Trowell Co.</u>, 338 Ark. 410, 419, 994 S.W.2d 468, 473 (1999). Instead, it is the duty of the courts to enforce agreements only as written by the parties thereto. <u>See</u> <u>Seidenstricker Farms v. Doss Family Trust</u>, 372 Ark. 72, 78, 270 S.W.3d 842, 847 (2008).

The agreement also lacks mutual assent and is unenforceable. Mutual assent is the touchstone of contract under both California and Arkansas law. <u>Nguyen v. Barnes & Noble Inc.</u>, 763 F.3d 1171 (9th Cir. 2014); <u>Pine Hills Health and Rehabilitation, LLC v. Matthews</u>, 2014 Ark. 109, 431 S.W.3d 910, (2014). In the present case, not only did Conair not sign the arbitration agreement, Conair is not even named in the agreement. The agreement only generically refers to "the Company" but never identifies "the Company." There is no evidence that Conair assented to the terms of the arbitration agreement prior to the Plaintiff commencing this action. Recently, the Arkansas Supreme Court denied a corporate defendant's motion to compel arbitration when the defendant failed to have its representative sign the arbitration agreement that it sought to enforce. <u>Pine Hills</u>, <u>supra</u>, 2014 Ark. 109. The Arkansas Supreme Court held that the defendant did not establish mutual assent to the arbitration agreement's terms. Because the agreement lacked mutual assent, the Supreme Court found that the agreement was unenforceable. <u>Id.</u> In the present case, although lacking the signature may not be fatal, the fact that Conair is never identified in the written contract is fatal.

C.  **The Plaintiff is entitled to a jury trial on all claims submitted to this Court.**

The Defendant states that the Plaintiff waived her right to a jury trial on any claims that proceed before this Court, including her SOX claim. The Defendant further contends that SOX does not prevent enforcement of jury trial waivers. The Defendant failed to provide a single citation in support of its position, undoubtedly, because no such authority exists. SOX plainly states that parties are entitled to jury trials under SOX and that waivers of jury trials are not enforceable.

Section 1514A(b)(2)(E) states "Jury Trial – A party to an action under subparagraph (1)(B) shall be entitled to a trial by jury." Subparagraph 1(B) is the provision of SOX that allows the Plaintiff to bring an action in and confers jurisdiction on the district court of the United States. 28 U.S.C. §1514A(b)(1)(B). Defendant cannot dispute that the Plaintiff brought this action under subparagraph (1)(B), and, because so, has the right to a jury trial. Section 1514A(e) of SOX clearly and unambiguously provides that the rights and remedies (certainly including the right to a jury trial) granted under SOX may not be waived by any agreement, including a predispute arbitration agreement. Specifically, §1514A(e) reads in pertinent part:

> **(e) Nonenforceability of certain provisions waiving rights and remedies or requiring arbitration of disputes.--**
>
> (1) Waiver of rights and remedies.--The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.

28 U.S.C. §1514A(e). Unquestionably, SOX renders waivers of jury trials unenforceable.

The presumed waiver of a jury trial is also unenforceable with respect to the Plaintiff's pendant state law claims. The Defendant's argument that the Plaintiff has

waived her right to a jury is premised solely upon the presumption that a valid arbitration agreement exists between the parties. As set forth, <u>supra</u>, the arbitration agreement is not only invalid pursuant to state law, but is also rendered invalid and unenforceable under SOX. Because the arbitration agreement is not enforceable, any presumed waiver of a jury trial contained in the arbitration agreement is equally unenforceable. For the reasons that the arbitration agreement is unenforceable, so is the presumed waiver of a jury trial.

## V. <u>CONCLUSION</u>

For the reasons set forth herein, the Plaintiff respectfully requests that the Court deny the Defendant's Motion to Stay Proceedings and Compel Arbitration and Motion to Strike Jury Demand and for all other just and proper relief to which she may be entitled.

Respectfully submitted,

/s/Susan Keller Kendall
Susan Keller Kendall (Ark. Bar No. 98119)
Kendall Law Firm, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Email: skk@kendalllawfirm.com
Tel: (479) 464-9828
Fax: (479) 464-9768

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Kim Flanery Coats
Littler Mendelson, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
kcoats@littler.com

Eric A. Savage
Littler Mendelson, P.C.
900 Third Avenue
New York, New York 10022-3298
esavage@littler.com

/s/Susan Keller Kendall